May it please the court, my name is Harvey Moore and I am the attorney for the appellants. Arbitrators have no power to enforce their decisions, only courts have that power. And as Article 3 of the New York Convention states, quote, each contracting state shall recognize arbitral awards as binding. Very simply, the court below misapplied the standard applicable to confirmation of the final partial award of the International Chamber of Commerce, International Court of Arbitration, which is a final award on an issue distinct from the controversy on the merits. Pardon me, let's take your words and think about them for a second. Final partial award, that's not an oxymoron? It is not an oxymoron, Your Honor. Secondly, why do you say it's final? I read the rules of Article 30 of the ICC as allowing for costs fixed by the court to be adjusted. There are two phases. The first phase is, in essence, what does it cost to participate in the procedure, in the process? And the ICC tribunal went through a very detailed argument as to why this is a final award not subject to offset. And it's the not subject to offset that becomes very important in that at the time that award is granted, each party is obligated as a matter of contract law and as a matter of law under the underlying procedural rules in Germany, which this panel was to follow, to pay its share of that advance against cost. It is true that at the end of the day, there may have been a adjustment to the cost. At the end of the day or at any part of the arbitration, for instance, suppose the court were to look at the estimation of damages and find that rather than 16 million euros, the maximum damages would be 1.7. And then they would say, we estimated the cost too high. The cost, instead of being 360 or $380,000, should be $100,000. At that point, the tribunal had the authority to issue a refund of that amount. So therefore, it wouldn't be a final partial award. It would be an interim award subject to modification under the circumstances seen by the tribunal. I think the use of the phrases interim, final, partial may be what causes the problem in the first place. But there have been... I don't know if it's the phrase that causes it. It's the fact that the number is subject to adjustment and almost certainly will be adjusted once the panel finds out what the dispute is really about and adjudicates who should win and who should lose. If that were true and if the only time that you could order a party to advance fees, then no one would advance fees in an arbitration. And the arbitration wouldn't go forward. But that wasn't going to be a problem here because the bank guarantees which your client had put up were deemed sufficient by the arbitration association to go forward. So I think the practical problem here is that it gives every sign that your client has tried to force this problem not for merits reasons but for litigation reasons. What's happened to the arbitration? It is still being stayed pending resolution. Why? That makes no sense whatsoever. Is your client deciding not to pursue the arbitration? Part of the reason that it's being stayed is it's unclear. If this party, if MEMSCO cannot stand for its share of the initial advance against fees and it has indicated in its brief that it may cause it to file for relief under the United States Bankruptcy Code and get protection thereby, if it can't even stand for the advance against fees, it may not be economic for my client to pursue. Which is sort of the point, isn't it? That's what MEMSCO says the point is. The reason your client is forcing the issue is to force them out of litigation. I don't think it's to force them out of litigation. It's to break their back. I mean, this is a tactic that your client has employed. And it's not an uncommon tactic. You know, your client has got a lot of resources. They're a small company. So you beat them down until they look around for a place where they can surrender. And Judge Carter understood that quite clearly. You know, I spent, it seemed like a long time then, 12 years on the district court. I understood it. It didn't take me long to figure that out. And that's just exactly what's happened here. And I think it's unconscionable. Your Honor, I think that the court has to look at the standard and the reason for the standard. And in researching this case again and reviewing the cases, I thought it was interesting that there were two key cases. Well, you didn't answer Judge Clifton's argument. You had the bank. You put up the bond or the security or the guarantee. You could have gone ahead. But then you say, well, we were afraid that they were going to go into bankruptcy. But that's one of the things that you were seeking to do, is to drive them into the ground. I don't believe that's... Then why did you do this? Tell me, why did you do this? Because my client is entitled, under the rules of the ICC, to only pay one half. And if they advance the full amount, they're entitled, separate and distinct from going forward on the arbitration, they are entitled to get that half back. But why did you put up cash rather than continue with your bank guarantees? It is my understanding that they put up cash as opposed to putting up the guarantees to... As it's forth in the papers, the purpose of putting up cash was to replace the guarantees, to have, in essence, the right or the ability to seek each party to do what they were contractually obligated to do. Let me ask you this. Before putting up the cash, did you investigate and make any attempt to get the cost of the bank guarantees split between you and the other side? Do you know... Was there any cost to the bank guarantees? I do not know the answer to that question. And if you don't know the answer to that, you wouldn't know whether they tried to get half the cost back from the other side. I don't know the answer to that either. Well, see, if bank guarantees were an accommodation to your large company, by the bank, because you have good relations, then it wasn't going to charge you anything. It seems pretty clear, following up on Judge Pragerson's point, that the advancement of the cash was not done to proceed with the arbitration, but to put the other party in a position where he could no longer afford a lawsuit. If that were true, and if that were a reason to prevent this order from being confirmed, then wouldn't that also prevent the confirmation of the order in Banco de Seguros and in Yeshuda, which required the parties to post significant, significant super-sedeus bonds, which required the parties to post, in one case, approximately $20 million of a bond, as the court said, to secure a possible award in the other side's favor and to prevent an award that would be meaningless. If those two cases allow the confirmation of those types of orders, which is show that you have the ability to go forward in this arbitration, why is it improper, and I don't think it is improper, to require a party to post its share of an advance of costs? The reason is given by Judge Carter. You don't need this kind of relief because you were, as far as you know, proceeding without any cost on the bank guarantees. But what Judge Carter's decision does is it attacks the integrity of the entire arbitration system. What Judge Carter's ruling does, by placing this additional factor of immediate harm, is it ignores the New York Convention and the ICC rules, which say that if you wish to participate in an arbitration, you pay one-half of the advance of costs. If you don't pay that, we will give you an award, which requires you to pay it to the other side, and when you come to the United States to get that order confirmed, according to the New York Convention, it doesn't have a factor of immediate harm. The New York Convention lists the specific reasons why an arbitration award should not be confirmed. What the Eastern District of Michigan did in Metaloid, and what Judge Carter did in this case, is they've added an additional factor, which is contrary to the plain language of both the New York Convention and the ICC rules. And I think that the arbitration tribunal made it very clear that it was their intention that both parties have to equally participate in the process. This decision... You're well over your time. Yeah, maybe that arbitration provision is unconscionable. But anyway, we'll hear from the other side. Good morning, Your Honors. My name is Jeffrey A. Robinson for Apelli Memsco. I believe that the conventional wisdom in this case and the correct wisdom in this case requires that the district court's order be affirmed. What you're asking is to free ride on SD throughout the arbitration? Well, I'm not asking the court for a free ride. What I'm saying is that the award should be enforced in accordance with the terms of the convention. And the convention says that an award does not come to this court to be enforced for a couple things. Number one, unless it's binding. And number two, it's enforced in accordance with the procedural rules of this court. So what's not binding about this? The arbitration association has rules that say pay up front. Your client voluntarily entered an agreement subjecting itself to arbitration under those rules. Why is your client exempt from having to pay up front? Because the finality of an award is a necessary precondition to it being binding. Why?  You try to get the parties to post the money up front so you're not stiffed at the end. The arbitration association does that, makes it part of its rules. How come your client isn't required to comply with it? It is required under the rules of the arbitration to do that. It did not do that. However, the proceedings then do not immediately go to court for entry of a final enforceable judgment that allows the other party to collect money. So the rules don't apply to you? Pardon me? The rule doesn't apply to you? If the rule says pay up front and you elect not to pay up front, how else are they going to enforce the rule without going to court? They are going to go to court and they are going to come to court when the award is binding. The award is not binding because, as has been pointed out, the number in this award, the amount in this award is inherently subject to change by the arbitration panel and also by the arbitration association. We make interim awards. I've sat as a member of a panel that makes interim awards. We don't issue those for our health and say maybe someday you can enforce this. If we issue an award and say, or a district court issues an award and certifies it as final, then it's final. And even though the subsequent litigation may cause an ultimate adjustment of that, interim relief is not unheard of in courts. Why is interim relief off the table for an arbitration association? When there is an order of interim relief, it would come to this court for enforcement in accordance with the convention. The convention says it has to be binding and it's enforced in accordance with the procedural rules of this court. That is in Article 3 of the convention. And under the procedural rules of this court, for instance, Rule 54B, there's only one final judgment. And we don't send parties out to collect money for costs that may never be incurred. As has been pointed out, the costs could be reduced. Courts require parties to post bonds. Courts issue orders that are enforceable along the way. Not every case waits until the very end to have everything become enforceable or to have anything become enforceable. I understand, but we don't have a bond in this case. We have a party going out and trying to collect money on a final judgment. And it runs the risk of multiplicity of proceedings here. Because you could have the claimant here collecting money from MEMSCO, and they will be trying to collect money in judicial proceedings that would follow here. And when they ever do pursue the arbitration, and there's no indication that they will, we could have an award that either that, first of all, they could drop the arbitration, and the cost would not then have been incurred. The cost could be reduced. The cost could be allocated to another party. But why is your client entitled to put the risks on other parties? In this case, for example, the arbitration could have gone forward, but only because the other side posted a bank guarantee drawing upon its credit, such if at the end it turns out your client is judgment-proof or is able to avoid having to pay a valid judgment, it's SD that's left holding the bag. Let's take out the bank guarantee part. Suppose you've got a party that can't post a bank guarantee. They don't have that much credit of their own. Are you saying the arbitration doesn't go forward because the association rule requires posting up front, and your client can thumb its nose at it and say, you can't get me? Actually, I don't think that result is required. For instance, the parties can waive arbitration, and if the responding party is not paying its costs in arbitration, that would amount to a waiver, and then the claimant could elect to go to court instead of arbitration. It could always waive the right to be in arbitration. But suppose the claimant's negotiated for an arbitration clause. You get an arbitration clause, and you're telling me the respondent, the defaulting party, can thumb its nose at the process and cause it all to come to a halt simply because it chooses not to pay? No, it doesn't come to a halt. The arbitration proceeds, and the... Not if the association says all the money has to be put up front, and in my hypothetical, SD's not so creditworthy as to be able to post a guarantee. Well, it's one of the risks that both parties face inherent in an arbitration when they select an arbitration. And you're telling me that one of the risks is that the other party will decide to default and keep the arbitration from going forward? That the other party may not have the resources or ability... No, decide to default. It's not limited to may not have the resources. It may be that, suppose somebody in your client's position says, I don't want this arbitration to go forward. I never wanted arbitration, so I'm not going to pay. Your Honor, I guess I do say that that is one of the inherent risks of arbitration. I have been through that, representing the claimants on the other side of cases here in the United States where the respondent, for whatever reason, chooses not to pay. And I have to tell my client, if you want to proceed with the arbitration, the rights that you contracted for, it's a more expensive process and you do have to pay that and then you collect that at the end when you prevail. And I think that's the way the system typically operates in the United States. And so here we have an arbitration association that tries to avoid that problem by saying, you've got to pay up front and we will issue a final binding award to cover those expenses. I understand that's what they're trying to do. However, Your Honor, the panel does not, in fact, issue what is a final and binding award because it did reserve the right to change the amount in its award and noted that that could happen down the road. The amount could go down before a final judgment is even rendered. So you therefore have a party coming here to the United States with the risk of getting a windfall, collecting money from a party for advanced costs that haven't actually been incurred, that might be refunded to them and very likely could be refunded to them or reallocated in this arbitration process. But you negotiated for that particular arbitrator. We negotiated with the party. We selected those rules. That is correct. But on the other hand, there's nothing in the... You want these arbitrators to work for nothing on this case from out of your pocket and then if you hit fine and if you don't, you just go into bankruptcy. Well, Your Honor, it is... That's a muck scheme, isn't it? That is a... We want there to be a fair ruling here. We don't want to have to be forced to pay costs in a final money judgment. Was there any finding by the district court judge that the amount of the cost was unconscionable or unfair? There was no... As I recall, there was not addressed. There was no evidence put in that would allow the judge to find that fact. All he found was that it wasn't necessary to give provisional relief at this point because S.D. had gotten the bank guarantees apparently at such a low cost that their counsel doesn't even know if there was a cost and all of a sudden they wanted cash put up as a coercive tactic against you. And he didn't even find that it was for a coercive tactic. He just found that they didn't need the relief right away because they were able to get the bank guarantees. But it doesn't change the fact that you're free-riding, right? It does not change that fact. The court did not look into that, but we have been participating in the arbitration, although not paying costs, and we'll be subject to whatever final award is added into. Why has the arbitration stayed now if they've put up the cash? Because the claimant's not pursuing it. It's my understanding that the claimant wants to suspend it until they've collected the advance on costs from the respondent. I think that's inherently unfair and it runs the risk of a multiplicity of proceedings. How did that amount come about? Because the claimant ramped up the amount in controversy by including issues that we think are extraneous, and the higher the amount in controversy was created, then the higher the cost became. $185,000 is a lot of money to be charged for the privilege of trying to terminate your contract. They terminated the contract and then they were dragged into court and handed a bill for $185,000 before anything could happen. Now it's being turned into a final judgment and there's no ruling on the merits. So in this situation, I think conventional wisdom is the best wisdom and the terms of the convention don't, under the terms of the convention, this is not a final order. It's not a final award and it should not be enforced as a final judgment. My time is up unless the court has any further questions. Well, was that the basis of Judge Carter's ruling? Was the convention the basis? I'm not sure I understood the question. Well, wasn't Judge Carter's ruling based on a failure to immediately demonstrate need? Yes, but I think you reached that. That is accurate and I think you reached that under the convention because Article III says that the enforcement of any award is subject to the procedural rules of this court and in Rule 54B one does not enforce a partial judgment unless there is an immediate need or no just reason for delay and the standard of immediate need which Judge Carter applied is basically what is there in Rule 54B and that's how I think that his ruling is correct even though he didn't specifically cite that part of the convention. Thank you. Okay, thank you. Any rebuttal? Very quickly, Your Honor. I think that there's two pieces of the convention. One is the enforceability. One is that the order should have been confirmed and then the second step is the enforceability has to be in compliance with the rules. There's two steps. One is you confirm a final arbitration award and the second is then how do you enforce it? Will you enforce it by getting writs issued by the appropriate court and the appropriate district? I think the counsel is glossing over the distinction between the confirmation of the order and the enforceability of the order and I think that the court below has added a gloss to the convention that was never intended to be there and there's only one other court in the entire United States, the Eastern District of Michigan, that has ever ruled that way. All of the other courts have looked at it as these are final orders. These are orders that we wish to preserve the integrity of the arbitration process and if this panel confirms the court below, it does attack the integrity of the entire arbitration process both in the United States and abroad because if a court says you have contracted to each pay your part of participating in this process and this panel says well it's okay if one party has more money than the other that the party with less money doesn't have to pay at all until the very end and everybody gets to freeload then the integrity of the entire arbitration process is at issue. You mentioned other courts. Are those cases cited in your brief? There are two more recent Eastern District of Michigan cases. Have you sent those in on a 28-J letter? We did not send them in, Your Honor. Then you can't cite them? I don't rely on them for my position. Are there any circuit court cases that say that under this particular situation where the international court does say that a cost should be paid by one side? This is a case of first impression for the court. I thought so. Thank you very much. I always thought that arbitration was kind of a speedy, economical way to settle disputes. We have mediators here. We don't charge anything. And who prepared this agreement with that provision in it? This agreement was jointly negotiated by the parties. I didn't ask that question, did I? I said, who prepared the agreement? I don't know the answer to that, Your Honor. I do not know which side actually prepared the agreement. I do know that both sides signed an agreement agreeing to a tribunal because you have a European party and an American party. That's why they agreed to this particular method of arbitration in this court, or in the specific panel chosen or the group chosen, was because you have citizens of different nations. And that's why this is such an important decision, because it has an impact not just on the parties to this case, but it has an impact on international arbitrations in general and whether or not we're going to attack the integrity of the court. There aren't international tribunals that handle these types of cases. Yes, there are. There are. I mean, I know in the Admiralty you have a court in London and one in Oslo. And they all expect to get paid. Especially if they're eating in Paris. So we resume this case in Paris. Yeah, okay. All right. Thank you, Your Honors.
judges: Pregerson, Clifton, Bea